EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* EPIFANIO MAYSONET ARROYO y MANUEL ALFREDO MAYSONET RIVERA, acusados y apelantes.

Número: CR-68-25          Resuelto: 20 de noviembre de 1969

*Jorge Arroyo Fernández,* abogado de los apelantes; *J. F. Rodríguez Rivera, Procurador General Interino,* y *Peter Ortiz, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El fiscal presentó una acusación contra los apelantes imputándoles la comisión de un delito de asesinato cometido de la manera siguiente:

"Allá en o por el día 4 al 5 de agosto de 1962, y en el barrio Monterrey de Vega Alta, P.R., que forma parte del Tribunal de Primera Instancia, Tribunal Superior de P.R., Sala de Bayamón, P.R., allí y entonces, los referidos acusados EPIFANIO MAYSONET ARROYO y MANUEL ALFREDO MAYSONET RIVERA, ilegal y voluntariamente, con malicia premeditada y expresa, propósito firme y deliberado de matar, demostrando tener un corazón pervertido y maligno, acometieron y agredieron con un pedazo de madera (tranca) y con las manos al ser humano nombrado ISMAEL TORRES BRUNO, conocido también por ISMAEL ROBLES VÉLEZ, ocasionándole golpes en distintas partes del cuerpo, entre ellos en la cabeza, a consecuencia directa de cuyos golpes quedó inconsciente dicho ISMAEL TORRES BRUNO, c/p ISMAEL ROBLES VÉLEZ trasladándolo los referidos acusados a la carretera en el Bo. Monterrey de Vega Alta, P.R., donde lo dejaron con el propósito de que fuera arrollado por algún vehículo de los que transitan por dicha carretera, como en efecto sucedió, recibiendo golpes a consecuencia de los cuales falleció dicho ISMAEL TORRES BRUNO, c/p ISMAEL ROBLES VÉLEZ, el día 5 de agosto de 1962."

Un jurado les declaró culpables de asesinato en segundo grado y fueron sentenciados a cumplir de 10 a 15 años de presidio.

Sucintamente expuesta en sus aspectos fundamentales, la prueba de cargo demostró que para agosto de 1962, el acusado Epifanio Maysonet Arroyo, era dueño de un negocio, sito en el barrio Monterrey de Vega Alta. En la noche del 4 al 5 de ese mes, el individuo Ismael Torres Bruno, conocido por Ismael Robles Vélez, le pidió "un palo" a la señora de Epifanio. Cuando ella se lo sirvió Robles Vélez le agarró la mano. Al ocurrir eso el hijo del acusado y también coacusado Manuel Alfredo Maysonet Rivera, le dio una bofetada a Robles Vélez y acto seguido Epifanio le dio dos golpes fuertes con una tranca en la cabeza, cayendo inconsciente al suelo el agredido. Entonces los coacusados lo levantaron y lo carga-

ron hacia la carretera a corta distancia del negocio y allí lo dejaron boca abajo con los pies hacia la orilla y el resto del cuerpo hacia la carretera.

Se presentó como evidencia de ambas partes el Informe de la Autopsia del cadáver de Robles Vélez. Este informe contiene las siguientes "Conclusiones: El cadáver presentaba fracturas de las costillas, del maxilar superior izquierdo y de la mandíbula inferior en el lado derecho. Este tipo de muerte se ve en los accidentes automovilísticos." Las partes también estipularon que una mancha obscura que se notaba en dos fotografías del occiso, en su espalda, es una mancha aparentemente producida, o sea, las huellas de una goma de automóvil.

La prueba de defensa consistió en una negativa de los hechos. Negaron que Robles Vélez hubiera estado esa noche en el negocio; que los acusados le hubieran agredido y menos que lo hubieran trasladado del negocio a la carretera.

En apoyo de la revocación de las sentencias los apelantes sostienen (1) que el jurado que entendió en este caso "no podía llegar a un veredicto de culpabilidad a base de los testimonios de los únicos dos testigos de cargo, aparentemente testigos oculares de los hechos, Ramón Reyes Rivera y María Antonia Hernández Márquez", y (2) que el tribunal sentenciador erró al no dar instrucciones de Homicidio Voluntario.

El primer error lo fundan en que (a) hubo contradicciones entre los dos testigos oculares presentados por el Pueblo; (b) que los testimonios de estos dos testigos debieron ser rechazados por los móviles que tuvieron para declarar en contra de los acusados y (c) que no se les debió dar crédito por la tardanza entre la ocurrencia de los hechos que motivaron el proceso y la fecha en que declararon ante el fiscal.

■ No tiene méritos el primer apuntamiento de error. Las contradicciones entre los testigos de cargo no eran sobre

los hechos esenciales. Una de las contradicciones señaladas era la de que mientras uno de los testigos declaró que había tomado ron con anís esa noche, la otra testigo, lo negó. Otra contradicción señalada fue la que aun cuando ambos testigos declararon que el acusado Epifanio los amenazó con un revólver si declaraban lo que habían visto, uno de ellos dijo haber visto el revólver y el otro dijo que no lo vio. Aparte de que estos testimonios fueron prestados unos cinco años después de la ocurrencia de los hechos, el jurado no venía obligado a descartar toda dicha prueba sino que le correspondía determinar a qué testigos creían total o parcialmente. *Pueblo* v. *Iturrino de Jesús*, 90 D.P.R. 706 (1964).

En cuanto a los móviles que tuvieron los testigos para declarar en contra de los acusados, el jurado tuvo ante sí la prueba aducida por ellos para ese fin y además recibió las instrucciones adecuadas por parte del juez sobre ese aspecto legal.

■ El tiempo que tardaron los referidos testigos de cargo en declarar al fiscal lo que ellos presenciaron, tardanza que se debió, según sus testimonios, a las amenazas a que fueron sometidos por parte de los acusados, no era motivo para descartar sus declaraciones. Los casos de *Pueblo* v. *Lugo*, 70 D.P.R. 145 (1949) y *Pueblo* v. *Márquez*, 64 D.P.R. 371 (1945), citados por los apelantes son inaplicables. Aquí no se trata, como sostiene el Procurador General, de testimonios de terceras personas sobre manifestaciones hechas por la perjudicada en que el elemento tiempo puede ser uno de los factores para determinar si se trata o no de prueba de referencia. Los testigos de cargo en este caso declararon, no sobre lo que les dijeron otras personas, sino sobre los hechos que ellos dijeron haber presenciado.

■ El segundo error también carece de méritos. Instrucciones sobre un delito menor sólo proceden cuando la prueba así lo justifica. *Pueblo* v. *Pantoja Aguayo*, 97 D.P.R. 236

(1969); *Pueblo* v. *Gagot Mangual,* 96 D.P.R. 625 (1968); *Pueblo* v. *Tufiño Cruz,* 96 D.P.R. 225 (1968); *Pueblo* v. *Fuentes Rivera,* Sentencia de 6 de marzo de 1969.

Si la muerte en este caso hubiera ocurrido como consecuencia directa de los golpes inferídoles por los acusados, quizás hubiera una base para sostener que los acusados actuaron movidos por un arrebato de cólera, pero la prueba demuestra que la causa de la muerte fue los golpes recibidos al pasarle un automóvil por encima a la víctima. (1) No procedía, por lo tanto, la instrucción sobre el delito menor.

*Se confirmarán las sentencias apeladas.*

El Juez Presidente Señor Negrón Fernández, no intervino.

---

(1) En cuanto a que los hechos imputados a los apelantes constituyen el delito de asesinato, véanse 2 Cal. Jur.2d, Sec. 20, pág. 508; 1 Wharton's *Criminal Law & Procedure,* Sec. 200, pág. 448; *People* v. *Fowler,* 178 Cal. 657; *People* v. *Harrison,* 176 Cal. App.2d 33.