EL PUEBLO DE PUERTO RICO, apelado, *v.* HÉCTOR ACABÁ RAÍCES, acusado y apelante.

*Número:* CR-85-91        *Resuelto:* 3 de marzo de 1987

---

*Ismael Colón Birriel,* abogado del acusado; *Rafael Ortiz Carrión, Procurador General, Josefa A. Román García, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Reafirmamos una vez más el respeto a la operación intelectual y a la función estimativa de los foros de instancia en cuanto a la valoración de la prueba. Por razón de las complejidades de la psicodinámica judicial, en este postulado elemental se afianza la buena marcha de nuestro sistema de administrar justicia. Después de todo, en su génesis, "[c]ada una de las operaciones intelectuales que sirve para formar el fallo desempeña un papel más o menos claro o importante, según la etapa del proceso. Para el planteamiento de la cuestión, es principalmente el análisis y la clasificación de las ideas. *Para la comprobación de los hechos, la observación, la intuición, el examen analítico y crítico.* Para la aplicación del derecho, la interpretación, la deducción, y la comparación. Para la decisión, la determinación, la apreciación, la síntesis y la voluntad". F. Gorphe, *Las Resoluciones Judiciales* (L. Alcalá Zamora y Castillo, trad.), Buenos Aires, Ed. Jurídicas Europa-América, 1953, págs. 68–69.

## I

Héctor Acabá Raíces fue acusado en el Tribunal Superior, Sala de Aibonito, de ilegalmente poseer y portar un arma de fuego, y de intencionalmente, pero sin malicia, apuntarla hacia un semejante. Arts. 6 y 8 y 32 (b) de la Ley de Armas, 25

L.P.R.A. secs. 416, 418 y 442 (b). (¹) Por tribunal de derecho fue absuelto del cargo de violar el Art. 32 (b), pero declarado culpable en los otros dos y sentenciado a seis (6) meses por el Art. 6 y a tres (3) años por el Art. 8. (²) Inconforme apeló.

A los fines de evaluar adecuadamente su recurso, a continuación resumimos la prueba desfilada por el Ministerio Fiscal.

Fidela Guevárez Ortiz, maestra de una escuela elemental en el Bo. Gato de Orocovis, declaró que el 27 de marzo de 1985, entre las 9:00 y 10:00 de la noche, desde el lado de una ventana interior de su residencia, observó cuando a su casa llegó un automóvil —que entró en marcha atrás— del cual se bajaron dos personas más y el acusado Acabá Raíces, a quien conocía desde antes. Éste inquirió por su esposo Carlos Rivera. Desde la ventana ella le respondió que no se encontraba. Entonces Acabá Raíces le dijo que necesitaba hablar con él. En forma agresiva y tono molesto, se refirió a él como un bandido y le informó que lo iba a esperar frente a la casa. Ella le pidió de favor que lo hiciera en la calle o de lo contrario llamaría a la Policía. El acusado, entonces le replicó que eso era lo peor que podía hacer y se marchó.

Subsiguientemente ella permaneció en la sala de su hogar. Media hora después oyó de nuevo un automóvil. Levantó la cortina para ver si era su esposo. No era. Esta vez vio el mismo vehículo estacionado en la calle, frente a su casa. Inmediatamente oyó dos disparos corridos hechos con un arma de fuego. Ella reconoció que eran las mismas personas de antes. El acusado Acabá Raíces estaba al lado derecho del conductor. Este último fue quien disparó. Atestó que los dos disparos fueron hechos con un arma de fuego, pero que no podía describirla. Pudo ver las dos ráfagas, y que éstas provenían

---

(¹) Originalmente la denuncia fue por tentativa de asesinato, pero en la vista preliminar se determinó causa probable por el Art. 32 (b).

(²) Ambas sentencias fueron suspendidas.

de la mano del conductor. Nada ni nadie fue impactado por los disparos. Fueron hechos en dirección a la casa donde ella estaba. En el lugar no se encontró ningún proyectil ni ningún casquillo. Francamente no podría describir el arma porque no la vio. Ella había visto y oído antes disparar armas de fuego en su casa, cuando era soltera, once (11) años atrás. Su padre tenía licencia para portar un arma. A su juicio, las detonaciones no eran compatibles con petardos. Luego de los dos disparos, el carro se fue del lugar. Llamó a su vecino Héctor Collazo.

El otro testigo de cargo, Héctor Collazo, en síntesis atestó, que el día en cuestión estaba en su casa viendo televisión. Entre las 9:00 y 10:00 de la noche oyó dos detonaciones. Corrió y vió un carro pequeño bastante arriba. Fue a la casa de su vecina Guevárez Ortiz y ésta no le quiso abrir. Ella le dijo que un individuo había disparado. Se dirigió a una estación de gasolina, encontró una patrulla de la Policía y le informó lo sucedido.

■ El Ministerio Fiscal renunció a otros tres (3) testigos por ser prueba acumulativa.(³) La defensa los entrevistó y no los utilizó.

Únicamente se limitó a presentar la declaración jurada prestada por la testigo Guevárez Ortiz al Ministerio Fiscal, el 29 de mayo de 1985.

En la misma, ella relata con mayor lujo de detalles la versión brindada en el juicio. Ni remotamente se contradicen ambas declaraciones. Si algún valor probatorio tiene esta declaración es reafirmar plenamente la veracidad, certeza y credibilidad de su testimonio en el tribunal.

---

(³) Las actuales Reglas de Evidencia de 1979 no definen el concepto de "prueba acumulativa". Sin embargo, la Regla 19(e) alude a la misma, como susceptible de ser —aun cuando sea prueba pertinente— válidamente excluida. El Art. 378 del derogado Código de Enjuiciamiento Civil, adecuadamente definía *evidencia acumulativa* como "la adicional del mismo carácter tendiente al mismo fin". 32 L.P.R.A. ant. sec. 1636.

Evaluemos los señalamientos en apelación.

## II

En el primer señalamiento Acabá Raíces cuestiona la suficiencia de la prueba y además, argumenta que los fallos emitidos fueron contradictorios e inconsistentes al haber sido declarado culpable y convicto por infracción a los Arts. 6 y 8 de la Ley de Armas y absuelto en el Art. 32 (b).

En buena metodología examinaremos inicialmente el señalamiento referente a la prueba. No tiene razón. La evidencia antes relacionada, de ser creída como lo fue por el tribunal de instancia, es suficiente y apta en derecho para sostener las convicciones. Veamos.

Con pragmatismo judicial —pues imposibilitaría todo encauzamiento y eficacia probatoria conviccional cuando un arma de fuego no es ocupada— desde principios de siglo nuestra doctrina jurisprudencial ha reconocido que no es menester presentarla en evidencia. *El Pueblo* v. *Julián*, 18 D.P.R. 940, 943 (1912); *Pueblo* v. *Nieves*, 35 D.P.R. 53 (1926); *Pueblo* v. *Cartagena*, 37 D.P.R. 281, 283 (1927); *Pueblo* v. *Blanco*, 77 D.P.R. 767 (1954); *Pueblo* v. *De Jesús*, 65 D.P.R. 932 (1946). Tampoco es necesario que el testigo sea "mecánico, militar, comerciante o experto en armas de fuego" para conocer e idóneamente declarar lo que otra persona tiene en sus manos. *Pueblo* v. *Guzmán*, 52 D.P.R. 458, 460 (1937). Este enfoque descansa en la premisa de que en "su aplicación humana el derecho no existe para exigir y perpetrar cosas imposibles, absurdas, inútiles o innecesarias". *P.R. Tel. Co.* v. *Martínez*, 114 D.P.R. 328, 344 (1983); *Pueblo* v. *Andreu González*, 105 D.P.R. 315, 321 (1976). Bajo esta óptica, fácil es advertir que en procesos de posesión y portación de armas, su demostración como elemento de prueba, esto es, datos capaces de contribuir al descubrimiento de la veracidad del hecho delictuoso, *no puede depender de la existencia de heridos que no*

hay, de impactos de balas cuyas trayectorias no los produce ni de casquillos de proyectiles de balas que no están disponibles si el arma en cuestión es un modelo que no los expele automáticamente al ser disparada. ([4])

En síntesis, en este tipo de casos un fallo de culpabilidad puede sostenerse si existen otros elementos o circunstancias demostrativas que lleven a la conciencia íntima del juzgador a concluir que el acusado poseía y portaba el arma. *Pueblo* v. *Torres Nieves*, 105 D.P.R. 340 (1976) ; *Pueblo* v. *Prieto Vélez*, 93 D.P.R. 102, 108 (1966) ; *Pueblo* v. *Garcés*, 78 D.P.R. 102, 107 (1955). Este enfoque no es incompatible con la norma de que la prueba, en tales casos, debe ser clara y convincente. *Pueblo* v. *Toro Asencio*, 104 D.P.R. 847, 849 (1976) ; *Pueblo* v. *Olivencia*, 93 D.P.R. 845 (1967) ; *Pueblo* v. *Rosario*, 80 D.P.R. 318 (1958) ; *Pueblo* v. *Santiago*, 80 D.P.R. 310 (1958) ; *Pueblo* v. *Oquendo*, 79 D.P.R. 542, 546 (1956) ; *Pueblo* v. *Pacheco*, 78 D.P.R. 24, 29 (1955).

■ En el de autos, cuantitativa y cualitativamente, la prueba de cargo creída por el juzgador directo de los hechos sostiene satisfactoriamente las convicciones. Realmente, en cuanto a este extremo, el señalamiento central del apelante Acabá Raíces no es de insuficiencia, sino de credibilidad. A eso se reduce. Únicamente si descartamos las declaraciones y percepciones no contradichas de los testigos de cargo —de que efectivamente ellos oyeron y vieron cuándo se realizaron los dos disparos por el conductor que lo acompañaba— procedería revocar. De lo contrario, de esos hechos objetivos, mediante operación lógica, inequívocamente se puede inferir la posesión y portación del arma conforme la certeza moral que proclama la Regla 10 (c) de Evidencia. Por estos fundamentos no podemos acceder a esa pretensión. Representaría sustituir esa apreciación de la prueba testifical injustificadamente. No detec-

---

([4]) En *Pueblo* v. *García*, 42 D.P.R. 142, 144 (1931), indicamos que aun existiendo un proyectil, no era necesario su presentación en evidencia.

tamos prejuicio, parcialidad o error manifiesto para así intervenir. El magistrado de instancia, como juzgador primario, estaba en mejor posición para evaluar la fuerza de convicción y de persuasión de dicha prueba en su ánimo y conciencia judicial. Por ende, no debemos intervenir con esa adjudicación. *Pueblo* v. *Cabán Torres,* 117 D.P.R. 645 (1986) ; *Pueblo* v. *De Jesús Rivera,* 113 D.P.R. 817, 826 (1983).

■ Aclarado el alcance y suficiencia de la prueba, concentremos en el planteamiento sobre alegados fallos contradictorios e inconsistentes. Tampoco procede. Primero, poseer y portar un arma —y apuntar con ella a una persona— son delitos distintos que configuran elementos diferentes. No existe base alguna para alegar y sostener inconsistencia. *Pueblo* v. *Cruz Negrón,* 104 D.P.R. 881, 884 (1976).

■ Y segundo, la determinación de no culpabilidad por el delito de apuntar ilegalmente a una persona con un arma de fuego, Art. 32 (b), no es irreconciliable con los dictámenes de culpabilidad por los delitos de poseer y portar ilegalmente un arma. *Pueblo* v. *Millán Meléndez,* 110 D.P.R. 171, 182 (1980).

### III

En su segundo señalamiento, Acabá Raíces expone que existieron contradicciones e incongruencias en la declaración de la testigo Guevárez Ortiz en el sentido de que él le hizo dos disparos con un arma de fuego —lo que tipificaría una violación al Art. 32 (a) de la Ley de Armas— y no obstante, se le acusó por infracción al Art. 32 (b), esto es, apuntar con un arma de fuego. Bajo esta premisa argumenta que el Ministerio Público debió enmendar expresamente la acusación para conformarla con la prueba presentada según la Regla 38 de Procedimiento Criminal, y que no hacerlo constituyó error.

El planteamiento es confuso e inmeritorio. Primero, hemos visto cómo la prueba no revela su aserto sobre alegadas contradicciones en el testimonio de la señora Guevárez Ortiz. Por

el contrario, su declaración ante el fiscal y subsiguientemente en el tribunal armonizan entre sí, al extremo de que una fortalece la sinceridad y legitimidad de la otra.

Y segundo, precisamente el apelante Acabá Raíces fue absuelto del Art. 32 (b), entonces, ¿de qué se queja?

## IV

El tercer error versa sobre la alegada ausencia de prueba en cuanto a que él "tomara parte directa en la comisión del delito que se le imputó o que hubiese un plan o conspiración previ[a] para la ejecución del acto delictivo o de que el acusado apelante cooperare de algún otro modo en la comisión de ese acto delictivo".

El apuntamiento es frívolo. La prueba desfilada estableció su participación en concierto y de común acuerdo con las otras dos personas que viajaban en el automóvil desde el cual se hicieron los disparos.

En *Pueblo* v. *Aponte González*, 83 D.P.R. 511 (1961), aclaramos que si bien la mera presencia de una persona durante la comisión de un delito no es suficiente, por sí sola, para sostener una convicción, ese hecho, tomado conjuntamente con las otras circunstancias que rodean el acto delictivo, puede considerarse a los fines de la determinación de responsabilidad. Ello es cuestión, en la mayoría de los casos, eminentemente circunstancial. Nuestro ordenamiento penal nunca ha exigido que un acusado ejecute personalmente el acto delictivo para imputársele válidamente. La responsabilidad como coautor puede establecerse por actos anteriores o como el resultado de una conspiración o de un designio común en que el acusado participó. *Pueblo* v. *Lucret Quiñones*, 111 D.P.R. 716, 742 (1981); *Pueblo* v. *Santos Ortiz*, 104 D.P.R. 115, 119 (1975).

En el presente caso, la prueba directa y circunstancial —e inferencias razonables— establecen plenamente la parti-

cipación directa intencional y la existencia de un designio común imputable a Acabá Raíces. Fuera de duda razonable se probó que estaba en el automóvil. No hay un solo indicador objetivo en qué sustentar que su presencia fuera involuntaria o producto de coacción. Todo lo contrario. Acabá Raíces de manera ostensible contribuyó materialmente a la eventual comisión de los delitos y sin lugar a dudas incurrió en conducta concertada. Inquirió el paradero del esposo de la señora Guevárez Ortiz. Luego, en forma agresiva, y molesto, le comunicó que lo iba a esperar. Despectivamente se refirió a él como un bandido. Ante la manifestación de la señora Guevárez Ortiz, dueña de la casa, de que llamaría a la Policía, le dijo que eso era lo peor que podía hacer. Se montó de nuevo en el vehículo, que subsiguientemente fue estacionado frente a la residencia. Poco tiempo después, estando todavía en el auto, su conductor hizo los dos disparos con un arma de fuego. Su participación y responsabilidad penal es incuestionable. Cooperó y contribuyó a la realización de esos hechos delictuosos. (⁵)

*Se dictará sentencia confirmatoria.*

El Juez Asociado Señor Rebollo López emitió opinión disidente. El Juez Asociado Señor Hernández Denton disiente sin opinión escrita.

—O—

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Disentimos. El error que comete el Tribunal al confirmar las convicciones decretadas por el Tribunal Superior de Puerto Rico, Sala de Aibonito, por unas alegadas violaciones a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y 418, es tan craso y elemental que el mismo resulta

---

(⁵)Por esta razón y por ser repetitivo, nos abstendremos de discutir el cuarto error que brevemente cuestiona la suficiencia de la prueba.

verdaderamente alarmante. Llana y sencillamente se confunde el *concepto de credibilidad* —y el respeto y deferencia que nos debe merecer la adjudicación que de la misma hace el juzgador de los hechos a nivel de instancia— con el *concepto de suficiencia de la prueba.*.

## I

Es correcto que nuestra jurisprudencia desde tiempo inmemorial reconoce el hecho de que en casos de esta naturaleza no constituye requisito indispensable que el Ministerio Público produzca y presente el arma de fuego en evidencia, *El Pueblo* v. *Julián*, 18 D.P.R. 940 (1912). Sí se requiere, sin embargo, que cuando esa sea la situación la prueba deberá ser clara y convincente, *Pueblo* v. *Toro Asencio*, 104 D.P.R. 847 (1976), y que aun cuando el arma de fuego en cuestión no tiene que ser descrita por los testigos con la precisión de un militar o de un experto en armas de fuego, *alguna descripción* tiene que darse. *Pueblo* v. *Santiago*, 80 D.P.R. 310 (1958); *Pueblo* v. *Blanco*, 77 D.P.R. 767 (1954); *Pueblo* v. *Guzmán*, 52 D.P.R. 458 (1937). Por último, hemos sostenido que procede la confirmación de sentencias condenatorias por violación a los citados Arts. 6 y 8 de la Ley de Armas, aun cuando no haya descripción alguna del arma de fuego, si existen otros *elementos o circunstancias* —tales como personas heridas de bala y casquillos, plomos e impactos de proyectil— que demuestran que el imputado de delito efectivamente poseía y portaba sobre su persona un arma de fuego. *Pueblo* v. *Torres Nieves*, 105 D.P.R. 340, 347 (1976); *Pueblo* v. *Garcés*, 78 D.P.R. 102, 108 (1955); *Pueblo* v. *Blanco*, 68 D.P.R. 932, 934 (1948).

En el presente caso, la "testigo ocular" de los hechos no pudo brindar descripción alguna del arma de fuego que alegadamente portaba el apelante. Tampoco hay prueba de impactos de bala en sitio o persona alguna. No se recuperaron, por último, casquillos de proyectil alguno en el sitio de los alegados disparos.

La única prueba que existe en el récord sobre la supuesta posesión y portación de un arma de fuego por el apelante —hecho reconocido por la opinión mayoritaria que emite el Tribunal en el presente caso— lo constituye las "dos ráfagas" o "fogonazos" que dice la testigo haber visto y el ruido a manera de detonación de un arma de fuego; opinión que emite dicha testigo a base del *recuerdo* que tiene de haber oído detonaciones de armas de fuego en su casa "once (11) años atrás".

Esa prueba es obviamente insuficiente en derecho para sostener convicciones por infracciones a los citados Arts. 6 y 8 de la Ley de Armas de Puerto Rico.